WALTER S. HUBBELL, Appellant, *v.* CHARLES A. MEIGS et al., Respondents.

Where a judgment in an action tried by the court or a referee is reversed by the General Term and new trial ordered upon questions of fact, the General Term is not required to specify, in its order, the particular errors of fact to authorize a review in this court; it is sufficient if the order states generally that the reversal was based wholly, or in part, upon errors of fact.

The General Term has not only authority but it is its duty, where the facts established require it, to reverse a judgment as to one or more of several joint defendants, and affirm it as to others.

Fraud is not established by proving the falsity of statements which were simply expressions of opinion and belief founded upon information

derived from others. The party alleging fraud must show, in addition, that he who made the statements knew them to be false at the time of making them.

Where one, with intent to cheat and defraud another, induces him by fraudulent means and representations to purchase stocks for value which he knows to be worthless, he is liable for the damages sustained, whether the purchase is made from him or another.

The measure of damages in such case is the difference in value of the stock, as the condition of the company issuing it really was, and as the purchaser was fraudulently induced to believe it was. The market price of the stock about the time or soon after the purchase, is strong evidence of its value, and in the absence of other proof will control. But where the real pecuniary condition of the company is shown, from which it appears the stocks were worthless, such market price is entitled to no weight upon the question of value. The purchaser, after discovery of its worthlessness, is not bound to mitigate the loss of him by whose fraud he was induced to purchase, by himself cheating some ignorant purchaser.

As between stockholders, the books of a corporation and sworn copies thereof are competent evidence to show the acts of the corporation.

(Argued December 6, 1872; decided December 17, 1872.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, reversing a judgment in favor of plaintiff entered upon the report of a referee. The order stated the reversal was for errors, both of law and fact.

The action was brought to recover the amount paid by plaintiff for 200 shares of the La Crosse and Milwaukie Railroad Company. The first count of the complaint set forth an alleged conspiracy between defendants to sell the stock, knowing it to be worthless, and to cheat and defraud purchasers, and a sale to plaintiff, induced by false and fraudulent representations, upon their part, made in pursuance of such combination. It further alleges an offer to return the stock upon discovery of the fraud, and a demand of the money paid therefor. The second count was for money had and received.

The facts established, which are pertinent to the questions discussed, appear in the opinion. Upon the trial the referee admitted evidence of statements and declarations of defendant, Alden, to plaintiff in the absence of the other defendants.

He also admitted sworn copies of the books of the La Crosse and Milwaukie Railroad Company.

The referee directed judgment against all the defendants for the amount paid by plaintiff for the stock, with interest, deducting two dividends received by him.

*H. R. Selden* and *John Ganson* for the appellant. Defendants are responsible for the fraudulent statements made by them, whether they knew them to be false or not. (*Bennett* v. *Judson*, 21 N. Y., 238; *Craig* v. *Ward*, 36 Barb., 378; *Marsh* v. *Falker*, 40 N. Y., 569; *Wall* v. *Stubbs*, 1 Maddock, 80; Am. ed., 55, and note *k; Cadman* v. *Homer*, 18 Ves., 10; *Sibbald* v. *Hill*, 2 Dow's H. of L. Cases, 264; *Medbury* v. *Watson*, 6 Metcalf, 246, 260; *Walker* v. *Symonds*, 3 Meriv., 73; *Zabriskie* v. *Smith*, 3 Kern., 331,; per DENIO, J., per Lord KENYON, C. J., in *Eyre* v. *Durnsford*, 1 East., 328; and see id., 330, Day's ed., note 1; *Gough* v. *St. John*, 16 Wend., 646, 651; *Eyre* v. *Durnsford, supra; Allen* v. *Addington*, id.; *Hubbard* v. *Briggs*, 31 N. Y., 529; *Medbury* v. *Watson*, 6 Metcalf, 246, 259, 260; *Paisley* v. *Freeman*, 3 T. R., 44; *Bostock* v. *Jardine*, 3 Hurlston & Coltman [Exch. R.], 700; *Conkey* v. *Bond*, 36 N. Y., 427; *Bennett* v. *Judson*, 21 id., 238; *Marsh* v. *Falker*, 40 id., 562, 566.) The fact of conspiring need not be proved. (*People* v. *Mather*, 4 Wend., 230, 261; *Gardiner* v. *Preston*, 2 Day, 208, 209; *Rex* v. *Cope*, 1 Str., 144; *King* v. *Parsons*, 1 Wm. Bl., 392, and note *o*, 2d ed.; *Regina* v. *Murphy*, 8 C. & P. [34 E. C. L.], 297; *Rex* v. *Pollman*, 2 Camp., 233; *Jones* v. *Baker*, 7 Cow., 445; 1 Greenleaf on Ev., § 111; 3 id., § 94; *Amer. F. Co.* v. *U. S.*, 2 Pet., 358, 365; *Rex* v. *Stone*, 6 T. R., 527; *Tappan* v. *Powers*, 2 Hall, 277, 297.) The finding of the referee, as to the fraudulent combination and joint liability of defendants, is conclusive on those questions. (*Baker* v. *Spencer*, 58 Barb., 248; *Sheldon* v. *Sherman*, 42 N. Y., 489, 490; *Grant* v. *Morse*, 22 id., 323, 324, 325; *Carman* v. *Pultz*, 21 id., 547, 551, 552; *Murphy* v. *Brace*, 23 Barb., 561, 565; *Watson* v. *Campbell*, 28 id., 421, 424; *Roberts* v. *Carter*, id., 462, 465;

*Lefler* v. *Field*, 50 id., 407, 413 ; *Milburn* v. *Belloni*, 39 N. Y., 54 ; *Smith* v. *Coe*, 29 id., 669, 670 ; *Ashley* v. *Marshall*, id., 494, 501 ; *Sinclair* v. *Tallmadge*, 35 Barb., 603 ; *Tomlinson* v. *The Mayor, etc.*, 44 N. Y., 605 ; *Brainard* v. *Dunning*, 30 id., 211, 216 ; *Chubbuck* v. *Vernam*, 42 N. Y., 435 ; *Fellows* v. *Northrup*, 39 id., 117.)    The General Term is authorized, when the facts established require it, to reverse a judgment as to one or more of several joint debtors, and affirm it as to others. (Code, §§ 12, 136, 274, 330 ; *Seeley* v. *Chittenden*, 4 How. Pr., 265 ; *Beal* v. *Finch*, 11 N. Y., 143, 144, per DENIO, J. ; *McIntosh* v. *Ensign*, 28 id., 169 ; *Skinner* v. *Gunton et al.*, 1 Saund., 230, note 4 ; *Jones* v. *Baker*. 7 Cow., 445, 449 ; *Hutchins* v. *Hutchins*, 7 Hill, 104.)    The copies of portions of the corporation books were properly received in evidence. (2 Phil. Ev., Edward's ed., 295, note 343 ; Ang. & Ames on Corp., 3d ed., 607 ; *Gery* v. *Hopkins*, 7 Mod., 129 ; *Rex* v. *Smith*, 1 Str., 126 ; *Brocas* v. *Mayor, etc., of London*, id., 307 ; *Warriner* v. *Giles*, 2 id., 954 ; *Mayor of Lynn* v. *Denton*, 1 T. R., 689 ; *Corp. of Barnstable* v. *Lathey*, 3 id., 303 ; *Wood* v. *Jeff. Co. Bank*, 9 Cow., 194, 205 ; *The State* v. *Buchanan*, 1 Wright, 233 ; *F. and M. Bank* v. *Boraef*, 1 Rawle, 152 ; *Motteram* v. *Eastern Counties Railway Co.*, 7 C. B. [97 C. L.], 58, 71 ; 1 Greenleaf on Ev., § 142 ; *Atkyns* v. *Hatton*, 2 Anstr., 387 ; *Miller* v. *Foster*, in note there ; *Armstrong* v. *Hewitt*, 4 Price, 216 ; *Auriol* v. *Smith*, 18 Ves., 198–205, 206 ; *Mortimer* v. *McCallum*, 6 M. & W., 67, per ABINGER, Ch. B. ; 72 per ALDERSON, B. ; 1 Starkie on Ev., 158, 2d Am. ed. ; *Adamthwayte* v. *Synge*, 1 Starkie, 183 ; S. C., 2 Eng. Com. Law, 348 ; 1 Greenleaf on Ev., § 485 ; id., § 142.)

*A. J. Parker* and *John H. Reynolds* for the respondents. False representations, to be actionable, must have been known to be false by the party making them, or he must have assumed or intended to convey the impression he knew they were true.    (40 N. Y., 562 ; id., 575, in note ; 45 id., 169, 175 ; *Spiegelmeyer* v. *Crawford*, 6 Paige, 254 ; *Young*

v. *Covell*, 8 John., 19; *Lord* v. *Goddard*, 13 How. [U. S.], 211; *The U. S. Trust Co.* v. *Harris*, 2 Bosw., 88; *Wilson* v. *Fuller*, 3 Adol. & Ellis [N. S.], 68; *Taylor* v. *Fleet*, 4 Barb., 95; *Clark* v. *Baird*, 7 id., 64.) Copies of the books of the corporation were improperly admitted in evidence. (1 Starkie on Ev., part 2, § 120, pp. 298, 299, note 1; 1 Phillips on Ev., 422, and note 800, in 3d vol., 1156, 1157; *Highland Turnpike Co.* v. *McKean*, 10 John., 154; *Jackson* v. *Walsh*, 3 id., 226; 1 Phillips on Ev., 422.) The referee erred in admitting evidence as against Meigs and Greenleaf of the acts, statements and representations of Alden, not made in their presence. (1 Greenleaf Ev., §§ 111, 174, 177; *Cuyler* v. *McCartney*, 40 N. Y., 222, 229.)

GROVER, J. The order appealed from shows that the judgment entered upon the report of the referee was reversed, and new trial ordered for errors, both of law and fact, but does not specify any particular finding of fact by the referee as erroneous. The counsel for the appellant insists that, from this omission, this court has no power to review any of the findings of fact by the referee. That to authorize this, the order must specify such findings as are held erroneous; and the review by this court is confined to those thus specified. This position cannot be sustained. The Code (§ 348) gives an appeal from judgments, both upon the law and the fact, when the trial is by the court or a referee. Upon such an appeal, it is the duty of the court to examine the case and determine whether any error, either of law or fact, to the prejudice of the appellant has been committed; and if so, award the appropriate redress. In this examination the court may assume that the referee found such facts, in addition to those contained in the report, as the evidence would have warranted, and were requisite to sustain his legal conclusions. Section 272 of the Code, among other things, provides, that if the judgment be reversed by the General Term, and a new trial ordered, it shall not be deemed to have been reversed on questions of fact, unless so

stated in the judgment of reversal; and in that case, the question whether the judgment should have been reversed, either upon questions of fact or of law, shall be open to review in the Court of Appeals. It will be seen that the General Term is not required to specify the particular errors of fact; but simply to state, in the judgment of reversal, that it was based wholly or in part thereon, as was done in the present case. When this is done, it is the duty of this court to review both the facts and the law, in like manner as the General Term upon the appeal to it.

Although it was not expressly found by the referee that the defendants combined to defraud the plaintiff, by inducing him to purchase stock of the La Crosse and Milwaukie Railroad Company, which they knew to be worthless, I think his legal conclusions show that he did so find; and as his rulings upon the admissibility of the declarations of Alden, as evidence against Meigs & Greenleaf, can be sustained only upon that assumption, I will first consider that question. The testimony shows that Meigs & Greenleaf were brokers in the city of New York, and dealers, to a large extent, in the stock in question, purchasing and selling it on their own account and for their customers, and that they purchased from and sold more or less of it for Alden; but this has no tendency to show any combination between them in respect to their dealings with others in the stock.

The conversation had between the plaintiff and Alden at the Astor House, the evening preceding the day the former made the agreement with Meigs & Greenleaf for the purchase of the stock, and the further fact that Alden called at the office of Meigs & Greenleaf while the plaintiff was negotiating, may excite suspicion, but furnish no proof of any combination or conspiracy. Alden, in the conversation with the plaintiff, made no allusion to Greenleaf or Meigs as dealers in the stock or otherwise; and there was no proof that he had any expectation that the plaintiff would apply to them in particular to purchase the stock. The call of the plaintiff

upon Meigs & Greenleaf was induced solely by the fact that they had been his brokers in previous stock transactions; and the call of Alden by the fact that they were his brokers. It does not appear that anything was said about the purchase of the stock while Alden was there, or that he knew that that was the business of the plaintiff there. The circumstance that Alden knew, in the evening of that day, that the plaintiff had made the contract, is entitled to no weight. It is not even proved that he learned it from Meigs & Greenleaf; as it appears that the witness Zook had also the same information, which he got from the plaintiff's brother at the Astor House where Alden was also staying. Had it been proved that Meigs and Greenleaf told Alden of the purchase, it would not be evidence of any confederacy between them. It was further proved that Jerome, a broker, had, sometime before the purchase, applied to the board of brokers to have the stock of the company placed upon the list of stocks sold at the board, and that Greenleaf had been appointed upon a committee to examine and report upon the propriety of so doing. There was no proof as to what this committee did, or what they reported, or that Greenleaf did anything in that capacity. This furnished no evidence of any combination between Greenleaf, or his firm, and Alden to put the stock off fraudulently upon the plaintiff or the public generally. Had the latter been proved, the plaintiff could have maintained the action upon the ground that, where a conspiracy to defraud the public generally is entered into, the conspirators are liable to any individual injured thereby.

My conclusion is that the evidence was not sufficient to sustain a finding of a conspiracy between the respondents to defraud the plaintiff or the public generally by inducing him or them to purchase the stock of the company in question. The referee, therefore, erred in the finding, and also in receiving the declarations and acts of Alden as evidence against Meigs & Greenleaf. But it is claimed by the counsel for the appellant that, conceding this, they were not entitled to a reversal of the judgmen; as their liability was established by other facts, in the

absence of any conspiracy with Alden. These facts are, first, a failure of consideration for the money paid by the plaintiff to them as the purchase-price of the stock; and, second, that they were guilty of fraud in making the sale, upon the discovery of which the plaintiff elected to rescind the contract; and did so, by a tender to them of the stock and demanding from them the purchase-money.

It is also insisted that it was proved that they were guilty of fraud in the sale, and that the damages sustained by the plaintiff thereby were equal to the amount of the recovery, and that the plaintiff was entitled to recover such damages in the action. The counsel insist that the plaintiff could not recover damages for such fraud in this action, for the reason that the complaint does not set out any such cause of action, but is founded upon contract only. This objection does not appear to have been taken upon the trial before the referee, and, if it had, would not have been well founded. The complaint contains two causes of action. The first contains all the allegations necessary to entitle the plaintiff to recover of the defendants damages sustained from the fraud; and that such damages were at least equal to the money paid by him for the stock, together with further allegations showing a recision of the contract by him, concluding with a demand of judgment for the amount of such money. Under this the plaintiff, by proving the fraud and his damages, would have been entitled to recover, although entirely failing to prove a rescision of the contract. The first cause of action set out was, therefore, founded upon tort. The second was what, under the former ystem, would have been called *indebitatus* assumpsit for money had and received by the defendants for the use of the plaintiff; a cause of action then and now upon contract. These causes of action could not be joined. (Code, § 167.) But the objection was apparent upon the face of the complaint, and no demurrer was interposed. The objection was therefore waived. (Code, § 148.) The inquiry, then, is whether any fraud, in making the sale, was shown to have

been practiced by Meigs & Greenleaf. As to the former, it was not proved that he individually had any participation in negotiating the contract. But he was a partner with Green-leaf, and, as such, liable civilly for his frauds in the business of the partnership. The referee found, and the finding was sustained by the evidence, that Greenleaf, while negotiating the sale to the plaintiff, in answer to his question, told him that the governor had signed the bill giving the company a valuable grant of land, which would enable it to build its road; that the eastern division of the road was completed or nearly so, and was doing a large business; and the earnings of that division were large; and the stockholders of that division would receive large dividends from the earnings of the road; that the stock of the eastern division was full paid stock, and the holders of it would be entitled to dividends, and the stock had recently gone up in the market; that the plaintiff then told Greenleaf that if he bought he wanted stock of the eastern division, full paid stock. There was no proof that the governor had not signed the bill, nor but that it gave the company valuable land; nor but that the stock had risen in the market. The referee, as a legal conclusion, held that these statements were material, and were positive affirmations of the matters stated as upon his own knowledge; and having been relied and acted upon by the plaintiff, and being untrue in fact, entitled the plaintiff to recover of Meigs & Greenleaf the amount of loss and damage sustained by reason thereof. I think this conclusion unwarranted by the facts found, and that the evidence would not authorize the finding of any additional facts sustaining it. The statements made were by a broker in New York to his customer in relation to the affairs of a corporation in Wisconsin, in the stock of which he was dealing. Under these circumstances Greenleaf, in what he said, could not well have been understood as speaking from his own personal knowledge as to the value of the land granted to the company, or what it would enable the company to do, or as to the amount of business done upon that part of the road completed, or the profits derived there-

from.   The statements were expressions of opinion and belief, founded upon information derived from others.   So regarded, fraud was not established by merely proving their falsity.   The plaintiff was required to show, in addition, that Greenleaf knew them to be false at the time he made them. (*Marsh* v. *Falker*, 40 N. Y., 562 ; *Meyer* v. *Amidon*, 45 id., 169 ; *Oberlander* v. *Spies*, id., 175.)   No such proof was given.   The plaintiff, therefore, failed in showing that Meigs and Greenleaf were guilty of any fraud in making the contract with him.   This disposes of the question as to a rescission of the contract.   There was no failure of consideration.   It is unnecessary to determine whether the corporation was authorized by its charter to sell its stock at less than par, or whether, in so selling, its officers did not violate their duty.   The plaintiff was a *bona fide* purchaser, and, being such, acquired a valid title to the stock transferred to him.   There was no over issue of stock ; and that in question having been sold by the proper officers of the corporation, it was estopped from showing its invalidity.   (*The N. Y. and New Haven R. R. Co.* v. *Schuyler*, 34 N. Y., 30 ; *Rogers* v. *Burlington*, 3 Wallace, 654.)   The stock delivered was the kind specified in the written contract.   There was no proof that any stock, restricted to the eastern division of the road, had ever been issued.   The plaintiff received from Meigs & Greenleaf exactly what he contracted for, and, they having been guilty of no fraud, he was not entitled to recover against them. The judgment against them was rightly reversed by the General Term, and a new trial granted ; and as to them, the order must be affirmed, and judgment given in their favor upon the stipulation, with costs.

From the opinion, delivered at the General Term, it appears that doubt was entertained by that court as to the propriety of affirming the judgment as to a part of the defendants, and reversing it as to others.   The law not only authorizes this, but it is the duty of the court so to do if such a judgment is required by the facts established.   (Code, §§ 12, 274 ; *McIntosh* v. *Ensign*, 28 N. Y., 169 ; *Bullis* v. *Montgomery* and others, *ante*, p. 352,

decided at the present sitting of this court.) It therefore must be determined whether the judgment of the referee should have been reversed as to Alden. The only respect in which his case differs from that of Meigs & Greenleaf is as to the proof of fraud practiced by him to induce the plaintiff to purchase the stock. It was found by the referee, and the finding is fully supported by the evidence, that Alden, shortly previous to the purchase by the plaintiff, stated to him that he had been connected with the company in question for a long time, and knew all about the affairs of the company; and that the land granted to the company (or the land grant) would build and complete the road of the company; that stock to the amount of only about $1,000,000 had been issued by the company, and not more than $2,000,000 of stock in all would be necessary; that there was but a small amount of stock upon the market, and that he did not know of more than two or three hundred shares for sale; that the stock could not be had for the price it was then selling at for a very long time; that then was the time to buy the stock if the plaintiff wanted it; that the stock would go up to par by the first of January ensuing; that the eastern division of the road was nearly completed; that the earnings were large, and a dividend would be paid therefrom in cash the next January; that the stock of the eastern division was nearly all full paid; that the directors were competent and honest, and managed its affairs well; that its affairs were in a prosperous condition; that the consolidation with the Watertown road was a good arrangement for the company. The referee further found, upon sufficient proof, that all these statements, except his connection with the company, were false, and, although it is not expressly so found, the proof was that he knew them to be false at the time; that he knew that there was but very little full paid stock (that is, stock for which the company had received par); that the company had disposed of large amounts of it to contractors much below par; that it was sent to New York by the company and sold on its account at a large discount, and that large quantities were then upon

the market; in short, that the company was bankrupt, and its stock worthless. It was found by the referee that the plaintiff relied upon these statements, and was induced thereby to purchase the stock; and the proof is clear that the statements were made by Alden for that purpose. This appears from the fact that he was a large stockholder, and otherwise interested; and by the proof that he, about that time, made similar false statements to others to induce them to purchase the stock of the company. In short, the evidence would have warranted a finding that Alden was engaged in putting off upon the public the stock of a company known by him to be bankrupt by falsely representing it to be valuable and intrinsically worth par. The legal conclusion of the referee, that this made him liable to the plaintiff for the damages sustained by the plaintiff from his fraud, was correct, unless some of the objections of the counsel thereto are well taken. It is insisted that he is not, for the reason that he did not sell the stock to the plaintiff. The referee found that it was his stock that the plaintiff purchased of Meigs & Greenleaf, and I think this finding supported by the evidence; but as it is immaterial whether it was his or not, I shall not examine that question.

Where a party, with intent to cheat and defraud another, induces him, by fraudulent means, to purchase stock for value which he knows to be worthless he is liable for the damages sustained, whether the purchase is made from him or another. The elements of fraud and damage are united; and that this gives an action to the injured party is a maxim as old as the law. (*Upton* v. *Vail*, 6 Johns., 181; *Medbury* v. *Watson*, 6 Metcalf, 259.)

It is further insisted that the damages awarded to the plaintiff are greatly excessive, being the entire amount paid for the stock and interest, less the dividends received, for the reason that the stock could have been sold in the market at a trifling loss for some time after the purchase was made. This is not the measure of the plaintiff's damages. That is the difference in value of the stock as the condition of the company really was,

and as it was fraudulently represented to be by Alden. It is true that the price at which the stock readily sold in New York is strong evidence of its value, and would, in the absence of other proof, be controlling. But when the real pecuniary condition of the company is shown, from which it appears that the stock was worthless, the price at which it sold in New York or elsewhere is entitled to no weight upon the question of its value. The plaintiff, relying upon the statements of Alden, purchased the stock, and had a right to retain it, as he did, until he ascertained that the company was bankrupt at the time of the purchase; and when he had ascertained that it was worthless, he was under no obligation to Alden to mitigate his loss by cheating some ignorant purchaser himself. The question is, what was the stock really worth at the time of the purchase; and not what it would sell for by practicing the deceptive arts resorted to by the company and Alden to inflate the price. The referee was, therefore, right in finding that the stock was worthless at the time of the purchase. The plaintiff and Alden were both stockholders of the company. The books of the corporation were competent evidence between them to show the acts of the corporation. (2 Phil. Ev., Edw. ed., 295; Angel & Ames on Corp., 3d ed., 607.) Sworn copies of the books were also competent. (*Grey* v. *Hopkins*, 7 Mod., 129; *Matterom* v. *The Eastern Counties Railway*, 7 C. B., 58.) It is now insisted that the proof, that the books from which the copies were taken were the books of the corporation, was insufficient. But that objection was not taken upon the trial. It cannot now be made. (*Day* v. *Roth*, 18 N. Y., 448.)

The plaintiff having shown that he was entitled to recover against Alden, the order of General Term, reversing the judgment as to him, must be reversed, and the judgment entered on the report of the referee against him affirmed, with costs; and the order as to the other defendants affirmed, and judgment absolute rendered against plaintiff in their favor.

All concur, CHURCH, Ch. J., and ALLEN, J., not sitting.

Judgment accordingly.