WILLIAM J. WESTCOTT, APPELLANT, v. SEYMOUR AINSWORTH, HIRAM TOMPKINS AND JOHN L. PERRY, RESPONDENTS.

*False representations — what are — knowledge of their falseness.*

Defendants, in order to induce the plaintiff to sell them goods, represented that they were the owners of a hotel, of which the estimated cost was $800,000, and upon which there was a trust mortgage of $600,000, for which amount bonds had been issued, $525,000 of which had been sold at par. It appeared, upon the trial of this action, brought to recover damages sustained from defendants' false representations, that the amount stated to have been sold at par included $20,000 held by banks as collateral security, $150,000 turned out in payment for the real estate, and certain bonds subscribed for by parties who had refused to take them, all which facts were known to defendants. *Held*, that the evidence showed the statement to be false and fraudulent.

Upon the inquiry being made of one of the defendants as to a report that all his property was covered up in his wife's name, he replied that the only property she had in the world was the little house in which she lived. It appeared upon the trial that he was, at that time, indebted to his wife to the amount of $65,000, of which $25,000 was for the price of real estate sold by her to him, and for which he had agreed to give her a mortgage. *Held*, that the statement was false and fraudulent.

One of the defendants stated that he had put $20,000 into the business. It appeared that he had in fact put in but $16,000 in cash, and a note for $4,000,

which had never been paid, and which he had subsequently taken back. *Held,* that the statement was false and fraudulent.

In an action to recover damages sustained by one who has been induced to sell goods to the defendants by false representations made by them, it must be shown that the defendants believed, or had reason to believe, that such statements were false at the time they were made; but proof of knowledge on his part of facts showing the statements to have been false cannot be overcome by his testifying that he believed the statements to be true.

APPEAL from a judgment in favor of the defendants, entered upon the trial of this action by the court without a jury.

The action was brought to recover $10,000 for goods sold and delivered upon a credit, alleged to have been obtained by the false and fraudulent representations of the defendants as to their responsibility.

The defendants were members of a firm known as Ainsworth, Tompkins & Perry. In December, 1873, the defendants applied to the plaintiff to sell the firm, on its credit, a large amount of goods. To obtain such credit the three defendants made, signed and delivered to the plaintiff a written statement, having previously made the representations orally.

In this writing they stated to the plaintiff, among other things, that Ainsworth was worth $100,000 in real estate and $30,000 in personal property; that Tompkins was worth $20,000, all of which he had put into the business; that the entire property known as the United States hotel was owned by them; that the estimated cost of the hotel and furniture was $800,000; that a trust mortgage had been given for $600,000, and bonds issued to that amount; of which $525,000 had been sold at par. Before the delivery of the goods, the plaintiff had heard a report that the defendant Ainsworth's property was covered up in his wife's name. He, therefore, made inquiry of Ainsworth in regard to this report. Ainsworth replied that the only property his wife had in the world was the little house she lived in, on Matilda street.

The plaintiff relied on these statements, and sold and delivered the firm goods of the value of $18,264.31, on their credit, taking their notes therefor, with some of the mortgage bonds as collateral.

The defendants are now all insolvent, and a large part of that debt is unpaid to the plaintiff.

As a matter of fact, found by the learned justice who tried the case, at the time of signing the statement $150,000 of the bonds had been paid out by the defendants, in consideration of the hotel property. The defendants had not owned the hotel property until purchased with said bonds. Including these $150,000, subscriptions for $505,000 of these bonds had been obtained; $20,000 of the bonds were held by banks as collateral to discounts for said firm; and the bonds held by the banks and those turned out in payment for the land, were included in the $525,000 of the statement.

In regard to a statement, that Tompkins had put $20,000 into the business, it appears, without contradiction, that he had put in $16,000, and had delivered the firm a note of $4,000, which they pledged as collateral, with other securities to a loan. The firm never received any thing on the note, and Tompkins afterwards took it back from them.

In regard to a statement that the only property which Ainsworth's wife had was the little house on Matilda street, it was found by the learned justice that she had at that time valid and subsisting causes of action against Ainsworth, for money loaned by her, and goods and real estate sold by her to him, amounting to $65,000, for which he was then indebted to her. One of the causes of action was the consideration of real estate which she had sold him, and for which he had agreed to give her a mortgage. This he had not done. The existence, nature and amount of this indebtedness was known to Ainsworth, at the time of his making the statement to the plaintiff that all which his wife owned was the little house on Matilda street.

As to the statement relative to Ainsworth's property, the learned justice finds that these statements were true, regard being had to the value of the real estate, as in good faith estimated by Ainsworth and other well informed men. Taking Ainsworth's testimony on the trial and his own estimates then given, the aggregate of his real estate seems, at the time of signing the paper to have been about $210,000; the incumbrances thereon about $71,000; the aggregate of his personal property, including $20,000 put in the hotel, to have been about $68,000 and the aggregate of his debts, other than the incumbrances on real estate, and including his liabilities as one of the firm, to have been about $130,000.

*North, Ward & Wagstaff*, for the appellant.

*Pond & French*, for the respondent Ainsworth.

*Putnam & Eustis*, for the respondent Tompkins.

*L. B. Pike*, for the respondent Perry.

LEARNED, P. J.:

The general finding that the representations and statements made in and accompanying the written paper were substantially true is qualified by the specific findings. Passing over the real estate, on account of the fictitious value often given to that kind of property, the fact is found that the defendants stated that $525,000 bonds had been sold at par. This was not true. Twenty thousand dollars of this amount were held as collateral by banks; $150,000 of this amount had been turned out in payment for the real estate. And the amount also included bonds which had been subscribed for by parties who had refused to take them. In these three respects, therefore, this part of the statement is found to be false.

The learned justice finds that in reply to an inquiry as to the truth of a report that Ainsworth's property was covered up in his wife's name, he said that the only property his wife had in the world was the little house she lived in on Matilda street. This statement was not limited to real estate. At that time, as the learned justice finds, she held valid causes of action against Ainsworth amounting to $65,000, for which he was indebted to her. His statement, therefore, was false, and it was material. The inquiry showed a suspicion that property which he was using as his own really belonged to his wife. And substantially the suspicion was correct. A debt to his wife of $65,000, of which $25,000 was equitably a lien on real estate, would be as dangerous to his credit, if known, as if he had already secured her for that amount; as he afterwards did. The statement, therefore, that she owned nothing but a little house, when he knew that she owned a large claim against him, was untrue and deceitful.

I think that the finding of fact that Tompkins put $20,000 into the business was incorrect. The stating of such a sum without

qualification fairly means that amount in cash. In fact, $4,000 was a note used by the firm only as collateral; not paid, and finally taken back by him.

The learned justice, in finding that the statements in the written paper were substantially true, seems to have included the allegation that Ainsworth was worth at least $30,000 in personal property. According to the testimony, and as claimed by the defendants' counsel on the argument, his personal property did not exceed $50,500. If we add to that the investment in the hotel property $20,000, we have $70,500. The debts to his wife are proved to be $60,000; other debts $2,500, and the debt owing by the firm $60,000. This is exclusive of his debts secured by mortgage. The statement that he was worth $30,000 in personal property cannot then have been true, on his own showing.

None of the statements, it is to be noticed, are expressions of opinion founded on information derived from others. They are statements of matters within the defendants' personal knowledge. (*Hubbell* v. *Meigs*, 50 N. Y., 480–489.)

Nor is this a case where the defendants are charged with making untrue representations in regard to credit of another person; as in cases of *Meyer* v. *Amidon* (45 N. Y., 169); *Marsh* v. *Falker* (40 id., 562). The representations were made in order to obtain goods for themselves. Their liability, as has been several times held, must depend on proof that they " believed, *or had reason to believe*, that the statements were false at the time, and, for that reason, that they were fraudulently made." (*Oberlander* v. *Spiess*, 45 N. Y., 178; *Wakeman* v. *Dalley*, 51 id., 35.)

In this case, as to the written statement and the accompanying representations, the defendants have severally testified that they believed them to be true, and the learned justice has so found. But when the facts which show a statement to be false are proved to have been known to the party making the statement at the time when he made it, it would be strange if he could escape liability by testifying that at the time of making the statement he *believed that to be true which he knew to be false.*

These defendants knew that $525,000 of bonds had not been sold for par, for they knew all the facts in regard to the bonds. And they do not testify that they believed that the words "sold for

par" meant "loaned as collateral to a bank" or "subscribed for and not taken," or " paid out in purchase of land."

The same may be said of the other untrue statements contained in the writing.

Again, as to the statement by Ainsworth that the little house was the only property his wife had in the world, there is no evidence that he believed this, and there is positive evidence that he knew it to be untrue. This case then comes within the decisions above cited. The defendants had reason to believe that their representations were false. They actually knew facts which were inconsistent with the truth of these representations. That the representations gave rise to the contracting of the other party there is no doubt.

It may be that the defendants intended to pay for the goods. That intention does not relieve them from the charge of obtaining credit by deceit and fraudulent statements.

The plaintiff was not willing to trust their intention. He wished to know the facts of their pecuniary condition, that he might judge for himself whether their intention would be fulfilled. Instead of stating the facts, they stated what they knew was not true and they did this to obtain the plaintiff's goods on credit.

The judgment should be reversed and a new trial granted, costs to abide event.

Present — LEARNED, P. J., and BOARDMAN, J. BOCKES, J., not acting.

Judgment reversed and new trial granted, costs to abide event.