Barker, J.
— At the time of the commencement of the action, the plaintiff was the owner of the property, and the same was in the actual possession of the defendant. The defendant sought to justify the detention of the property, after the plaintiff made proper demand upon him for a return of the same, upon the ground that the horses broke into his inclosures from the highway, and while they were doing damage to growing crops, he seized and took them into his custody, in pursuance of the provisions of chapter 814 of the Laws of 1867. The seizure was made on the morning of Saturday, and this action was commenced on Monday following, and during the intermediate time the property remained in the possession of the defendant.
On the trial the plaintiff gave evidence tending to show that the animals broke into the defendant’s fields directly from his own pasture lot, and not from the highway. The defendant’s evidence tended to show that the horses broke into his inclosures directly from the highway where they were running at large and unattended. The jury were instructed if the horses were running at large in the highway, and broke into the defendant’s inclosures therefrom, then the defendant was entitled to a verdict, and the plaintiff could not recover as the defendant’s detention of the animals was justifiable under the provisions of the statute, that if they broke into the defendant’s fields, from the adjacent pasture lands, then the plaintiff was entitled to recover, as the statute afforded the defendant no protection in such a case, for a seizure and detention of the horses.
. It was held in Hubbell agt. Meigs (50 N. Y., 480), that the act has no application to trespassers through division fences between neighbors, but only those committed from the road. The rule of law laid down by the trial judge was in strict compliance with the statute as interpreted by this decision.
The defendant insists, however, that upon the trial, he presented conclusive evidence that the horses came into his inclosures from the highway. In support of this position, he *42 proved that on the same day the horses were seized by the defendant, and immediately thereafter, he made complaint in writing, under oath, to William Leach, a justice of the peace, in the town in which such seizure was made, and that thereupon the magistrate issued a summons returnable on the 7th day of July, 1877, and the same was returned as served in the manner required by the terms of the act. It appears that this process was served upon the plaintiff in this action as owner, and that he appeared upon the return day, and made an answer in writing, duly verified by himself, and the proceedings were adjourned until the seventeenth day of July, when a jury was summoned, the defendant appearing as complainant, and the plaintiff as owner, and witnesses sworn, on the call of the respective parties.
The justice’s docket was produced and read in evidence, and it contains an entry as follows:
“Jury delivered their verdict in open court, whereby, they find a verdict for plaintiff, of six dollars and twenty-five cents, whereupon I did immediately render judgment upon such verdict for damages in favor of plaintiff and against defendant, for six dollars and twenty-five cents and costs of suit, and the sale of the said property made in pursuance of statute.
$6.25
“ WILLIAM LEACH,
$5.00 costs.

Justice of the Peace”

If on inspection of the whole record, it is made to appear that it was litigated in these proceedings, and determined as a matter of fact, that the horses entered upon the defendant’s premises from the highway, then, as betweén these parties, it is conclusive evidence upon the same issues in this action, and establishes the fact in the defendant’s favor, and it was the duty of the court to direct a verdict in the defendant’s favor, as requested on the trial.
It is a well settled and general rule, that the judgment of a court of concurrent jurisdiction directly on the point, is, as a plea, a bar; or as evidence conclusive, between the same parties, upon the same matter directly in question in another *43 court; or, in other words, that the decision of a court of competent jurisdiction, directly upon the same point, is conclusive when the same point comes up again in controversy between the same parties, directly or collaterally, and it makes no difference whether the first adjudication is a proceeding according to the common-law, or summary in its character (1 Greenleaf on Evidence, see. 526-528; White agt. Coatsworth, 2 Seld., 137).
This proposition is not contended against by the plaintiff, but it is argued by him that it does not now appear that in the proceedings before the justice, the question was up and determined as a fact, that the horses did enter the defendant’s inclosure from the highway, I concur in taking this view of the record, as I am unable to discover that that question was litigated in those proceedings, or necessarily determined by the verdict.
In the complaint made by the defendant, upon which the proceedings were initiated before the justice, it does not state that the horses which were found trespassing upon his premises, entered thereon from-the highway. The whole of that document is in these words: “ I hereby make complaint to you that I have seized and taken into my custody (description of horses * * * ) found trespassing upon the premises owned and occupied by me, in said town, contrary to the provisions of chapter 814 of the laws of the state of ¡New York, passed May 9th, 1867; and “I hereby request you to issue a summons as required by the provisions of the said act.” The summons issued by the magistrate is substantially in the language of the complaint, and it does not state, that the horses entered from the highway. The defendant on the return of the summons, filed a written answer denying the complaint, and setting up that if the horses did enter upon the complainant’s premises, it was through and over a division fence, which it was the duty of the complainant to keep in repair.
The complainant as well as the owner having both appeared *44 before the magistrate’s court, it was competent to litigate and determine the fact, essential to the maintaining of the proceedings, that 'the horses did enter from the highway. But the record does not prove that the fact was litigated, or any evidence given upon that subject. The form of the verdict as rendered by the jury, and the judgment' entered thereon, indicates that other questions than that were in issue, and the verdict of the jury was based upon a determination of the same in the defendant’s favor. The proceedings contemplated by the statute are in rem and not in personam, and do not under any circumstances provide for rendering a personal judgment, against the owner, for the damages which the complainant may have sustained by reason of the trespass (Campbell agt. Evans, 45 N. Y., 356).
This is the statute: “If, on the return of the process, the jury shall find that no sufficient cause is shown why a sale should not be made, then the justice shall issue his warrant directed to a constable commanding him to sell the animals at public auction, for the best price that can be obtained therefor.” The form of the verdict, although not in compliance with the statute, might be treated as an irregularity, and the record be held sufficient and conclusive upon the question sought to be proved by the same, if the question was up and litigated. It would have been competent for the defendant on the trial to have made proof, if such was the fact, that the question was litigated before the magistrate, whether the horses came in from the road or not. But by the record it cannot be said that the question was litigated and determined that the horses did enter upon the complainant’s premises from the liighwaju The question being an open one, the verdict of the jury in the plaintiff’s favor is supported by the evidence.
We should unhesitatingly direct an affirmance of the judgment, if improper evidence had not been admitted over the defendant’s objection, which in our opinion was unfavorable and prejudicial to his case. The defendant was called as a witness in his own behalf, and gave evidence in support of his *45 contention that the horses came from the highway on to his premises. On the cross-examination the following questions were asked the plaintiff:
‘‘ Q. Have you since this action was commenced put your property out of your hands ? A. I have mortgaged it.
“ Q. Did you at the time this action was commenced, own a farm in your name, free and clear of incumbrance, in the state of Minnesota ? A. I had a deed of M0 acres of land in Minnesota, or nearly that.
“ Q. And was it free and clear of incumbrance at that time ? A. There was no incumbrance on it.
“ Q. Do you own that property now ? A. Ho, sir.
“ Q. What have you done with that property ? A. I deeded it to my wife.
“ Q. Did you own any personal property in the town of Olarkstown when this action was commenced ? A, I did.
“ Q. Have you mortgaged all that personal property for as much if not more than it is worth ? A. I have mortgaged it, and I presume for as much as it is worth.
“ Q. To whom? A. To James Moore and others.
“ Q. Are these parties relatives of yours? A. Yes, sir.”
Each one of these questions was in due time objected to as immaterial, and the same was overruled and the defendant excepted. That the objection was well made cannot be doubted, for the questions were both impertinent and immaterial, and we are unable to say that the facts developed by this evidence did not injure and prejudice the defendant’s case, and it is very probable that it did.
The purpose of the examination is manifest, as indicated in the first inquiry : “Have you, since this action was commenced, put your property out of your hands ? ” with a view of having it appear to the jury that the defendant was incumbering and disposing of his property on the supposition that he would not succeed in his defense to this action, and if he did not, to have his property beyond the reach of the plaintiff’s judgment and execution. The jury must have understood that, in the *46 mind of the court, the evidence was pertinent for some purpose, or the same would not have been received over the defendant’s objection. The pertinacity with which this line of inquiry was pursued on the part of the plaintiff, indicates that he believed that it would be of advantage to his side of the case. As the defendant relied in a large degree upon his own evidence to maintain his defense, the proof must have worked an injury to him, if the facts disclosed in the least prejudiced him in the minds of the jury.
In Baird agt. Gillett (47 N. Y., 180) the rule, as there laid down, is undoubtedly the correct one. “If improper evidence be given upon the trial which bears in the least degree upon the result it is fatal.” As the evidence was improper, and as we are unable to say that it might not have biased the jury and influenced the result, its admission under objection was error, for which the judgment should be reversed.
New trial granted, with costs to abide the event.
Smith, P. J., and Hardin, J., concur.