## EMMA SILVER MINING Co. (Limited) *v.* EMMA SILVER MINING Co. OF NEW YORK and others.

*(Circuit Court, S. D. New York.  September 30, 1880.)*

1. RES ADJUDICATA — PRINCIPAL AND AGENT — ACTION FOR DECEIT — RESCISSION OF CONTRACT.

A judgment in favor of the defendants, in an action of deceit for inducing the plaintiff to purchase property from the party whose agents the defendants were in such transaction of sale, is not a bar to a suit in equity brought by the same plaintiff against such principal of said defendants to rescind the contract of sale, where the bill states, as one ground of rescission, that the sale was assented to on the part of the plaintiff, a corporation, by a board of directors, all the members of which, except one, were furnished with stock to qualify them as directors by the vendors and promoters of the company, or had agreements with them which created an interest in promoting the sale inconsistent with the interests of the plaintiff, which facts were at the time of the sale unknown to the plaintiff, and were not alleged in the complaint in the action for deceit.

2. SAME—DIFFERENT CAUSE OF ACTION—DECEIT—RESCISSION.

The judgment is not a bar unless for the same cause of action, and the cause of action is not the same if in the action for deceit a fact must have been determined in favor of the defendants which the plaintiff is not obliged to prove in order to entitle itself to a decree of rescission, as in this case the fact of an intent to defraud; or if the decree of rescission may pass upon proof of facts alleged in the bill which in the suit for deceit it was not necessary to prove to entitle the plaintiff to recover, as in this case the fact that the plaintiff did not have an independent board of directors.

3. SAME—PRINCIPAL AND AGENT.

*It seems* that a plaintiff who has brought his action against agents in a transaction, and has had judgment therein rendered against him, cannot litigate the same cause of action against the principal.

4. SALE—RATIFICATION—ACTION FOR DECEIT.

The commencement and prosecution of an action at law against the agents of the vendor, to recover damages for deceit in inducing the plaintiff to purchase property, is not necessarily an election to affirm the sale, so as to preclude the plaintiff from maintaining a subsequent suit to rescind the sale. Such an action for deceit is not an election to affirm where there is nothing in the complaint showing that the sale has been adopted and affirmed, and where the *ad damnum* in the complaint is the alleged price paid for the property. Such complaint *may be* an election to affirm the sale; as, for instance, if it states that the property has been retained, and prays that the dif-

ference between its value and the price paid be recovered as damages.

5. SAME—SAME—ACTION FOR DAMAGES—PRIOR KNOWLEDGE.

The commencement and prosecution of an action against the agents to recover damages for the failure to deliver part of the property which by the contract of sale the agents undertook, on their own behalf, as well as on behalf of the principal, to deliver, is an election to affirm the sale if at the time of the commencement or prosecution of the action the plaintiff had full knowledge of his rights and of the facts relied on for avoiding the sale. But a plea alleging such prior suit is bad which does not also allege such knowledge of the facts.

6. NONSUIT—SUBSEQUENT SUIT.

A judgment of nonsuit against the plaintiff is not a bar to a subsequent suit on the same cause of action.

7. INJUNCTION—FRAUD—RESCISSION OF CONTRACT.

In a suit to obtain an injunction against the collection of promissory notes of the plaintiff held by the defendant, and obtained from a third party to whom they were given by the plaintiff, on the ground that they were obtained by him in fraud of the plaintiff's rights, and as part of a scheme to defend against plaintiff's claim for fraud against himself, it is a defence that in a prior suit by the present defendant against the present plaintiff, on the notes, the present defendant obtained judgment by default after the court had acquired jurisdiction of the person of the defendant therein, the present plaintiff, by service of process, the fraud being such as might have been set up and proved as a defence in the action on said notes; and the transaction being one independent of the sale, an injunction against the collection of the notes would not be a part of the relief to which the plaintiff would be entitled upon a rescission.

8. SAME—SAME—SAME.

In a suit for an injunction against the collection by the defendant of a claim for moneys loaned by the defendant to the plaintiff for the payment of dividends on the capital stock of the plaintiff, a corporation, on the ground that such loan was part of a fraudulent scheme for inducing the purchase of property by the plaintiff, it is a defence that the defendant has obtained judgment by default against the plaintiff for said loan in an action in which the court obtained jurisdiction of the person of the defendant therein, the present plaintiff, and in which the alleged fraud might have been alleged and proved as a defence, where the former judgment has been satisfied by the sale on execution of the present plaintiff's property, and the application thereto of the proceeds of the execution sale.

*It seems* that if said judgment had not been satisfied, an injunction against the collection of the claim might be a proper part of the relief to be granted to the plaintiff upon a rescission of the sale, notwithstanding that the judgment was a conclusive determination against the plaintiff of the alleged fraud in loaning said moneys.

9. PLEADING—AMBIGUITY—CONSTRUCTION.

> A plea that is ambiguous, and may be construed as a plea of affi͞r͞n-ance of a contract sought to be avoided, by the election to affirm the same by adopting remedies inconsistent with its disaffirmance, or as a plea of laches and of acquiescence in the contract, will be construed as a plea setting up one of these defences only; and where the plea was filed under leave given to file several pleas, and leave to file a plea of laches and general acquiescence was refused by the court, the plea, will be construed as intended to be in conformity with the leave to plead as a plea of affirmance by election of inconsistent remedies, rather than as a plea of laches and general acquiescence.

In Equity.

Final hearing upon several pleas filed by the defendant company, Park, and Baxter, in bar of the bill of complaint.

On or about April 28, 1871, the defendant company became the owner of certain mining property in Utah known as the Emma mine. The defendants Park and Baxter were large shareholders in that company. It was, shortly, determined to sell the mine in England. In pursuance of this determination, Park proceeded to London with full authority to represent Baxter and the defendant company in the matter. After much negotiation the complainant company was organized by Park and others for the purpose of purchasing the mine. This was upon November 8, 1871, and soon afterwards the mine, together with certain ore and a balance in money alleged to be on hand, was conveyed by the defendant company to the complainant. At the same time, Park, individually, executed an agreement guarantying to the complainant the quantity of the ore on hand and the title of the mine. The consideration was £500,000 in money and 25,000 full-paid shares of the complainant. This consideration was paid to Park in behalf of the defendant company. Park and Baxter, as stockholders in that company, received with knowledge of the facts a portion of the consideration proportioned to the amount of stock held by them. The complainant went into occupation and began vigorously working the mine. In the latter part of the year 1872, some litigation was had in the courts of Utah by complainant, with a corporation known as the Illinois Tunnel Company, growing out of conflicting claims

to the same body of ore. A settlement was effected by which complainant gave the tunnel company notes for $100,000. The mine proved unremunerative, and in September, October, and November, 1872, Park advanced to complainant, to enable it to continue payment of dividends, sums amounting in all to $120,000.

Upon December 10, 1874, the complainant began an action, in the United States circuit court for the southern district of New York, against Park and Baxter, to recover from them damages for deceit, alleged to have been practiced by them in the sale of the mine. The complaint set forth in detail numerous fraudulent representations and concealments, and alleged that plaintiff had been damaged to the extent of $5,000,000. The answer traversed the allegations of the complaint. This action was tried before a jury, and, upon April 28, 1877, a general verdict was rendered for defendant. Judgment was entered in accordance therewith upon February 8, 1879. Upon May 12, 1875, the complainant began another action, in the same court, against Park alone, upon his individual agreement to deliver the ore on hand and the mining property agreed to be sold. The complaint set forth that the quantity of ore on hand was much less than the amount called for in the agreement, and that the litigation with the Illinois Tunnel Company constituted a breach of the agreement to deliver the property sold. Issue was joined, and upon October 15, 1877, the complaint was dismissed upon plaintiff's failure to appear and prosecute his action.

The notes given in settlement to the Illinois Tunnel Company passed into the hands of Park. Upon May 22, 1876, Park recovered judgment, in the district court of the third judicial district of the territory of Utah, for the amount of said notes, against complainant. In December, 1874, the mine was seized, upon an attachment by Park, in a suit brought in the said district court to recover the moneys loaned by him to complainant for payment of dividends. Judgment was recovered therein against complainant. Upon February 6, 1875, execution was issued upon that judgment,

and upon September 8, 1876, the mine was sold upon that execution, and bought in by the defendant Lincoln, in Park's interest.

The present suit was begun on November 28, 1877. Its object was a rescission of the sale of the mine and other property, and an accounting by the defendants for the purchase money. The bill of complaint set forth very fully various misrepresentations and concealments which had been practiced in effecting the sale. In particular it alleged that the sale was agreed to on behalf of complainant by a board of directors who were not the independent representatives of the stockholders, but were either agents of the vendors, or qualified as directors by receiving from the vendors the requisite qualification shares, and that some of them had other agreements with the promoters of the company which created, upon the part of the directors, a personal interest in assenting to the sale inconsistent with their duty to the corporation. The bill further alleged that the Illinois Tunnel Company settlement was made collusively between Park and the tunnel company, in reality, for a consideration smaller than the amount of the notes, and that Park's object was to acquire some interest or color of title for complainant in the ores claimed by the tunnel company, and thus avoid a breach of his guaranty of title. It is also alleged in the bill that the advances for payment of dividends were made by Park with full knowledge of the facts, and of the complainant company's inability to repay them, and were in fraud of the stockholders, being made in order to continue the false impressions produced by Park's misrepresentations, and to enable him to dispose of his stock. Judgment was demanded that the sale be rescinded; that the defendants repay to plaintiff the purchase money received by them; and that the defendant Park be perpetually restrained from collecting or transferring either of the notes given in settlement of the claims of the Illinois Tunnel Company, and also from collecting any portion of the moneys advanced by him for the payment of dividends.

Upon motion of the defendant company, Park, and Baxter,

leave was granted to them to file several pleas in bar to the bill. The pleas filed were as follows:

1. A plea by the defendant company in bar of so much of the bill as prays for a rescission, setting forth the proceedings in the action in the United States circuit court for the southern district of New York, against both Park and Baxter, to recover damages for deceit upon their part in the sale of the mine set forth in the present bill, the verdict and judgment therein in their favor, and claiming that all questions of fraud, artifice, device, misconduct, or deceit involved in this suit have been adjudicated in that action, and that, by reason of the fact that Park and Baxter were its agents, defendant company is entitled to the benefit of that adjudication, and that the same is a bar to the cause of action for rescission set forth in the bill.

2. Three pleas of the defendant Park, which are in substance as follows: (a) The first plea sets up the proceedings in the action brought against Park alone by complainant company, in this court, to recover damages upon the individual guaranty by Park of the title to the mine and the quantity of ore, and the recovery of judgment in his favor in that suit, and alleges that all the questions involved in this suit were adjudicated therein. (b) The second plea is addressed to that portion of the bill referring to the Illinois Tunnel notes. It alleges that Park has recovered judgment in the district court of the third judicial district of Utah upon said notes against the complainant company. (c) The third plea is addressed to that portion of the bill referring to the alleged cash advances made by Park. It alleges that Park has recovered judgment in the same court of Utah against the complainant company for the amount of such advances, and that under execution issued on such judgment the mine has been sold and bought by the defendant Lincoln in behalf of Park, and that the judgment has been satisfied by application thereto of the proceeds of the sale on execution.

3. Three joint pleas of the defendants Park and Baxter, setting up the proceedings in the aforesaid action for deceit, brought by complainant against them in the United States

circuit court for the southern district of New York, and pleading its legal effect in three different ways: (*a*) As an adjudication of the cause of action set forth in the bill; (*b*) as a determination of the same facts as those involved in this suit and charged in the bill; (*c*) as an adjudication of the cause of action set forth in the bill, styling the same "a transaction of sale," as in the bill, instead of a sale and conveyance.

4. A joint plea of the defendant company, and of Park and Baxter, setting forth the proceedings in the two suits in the United States circuit court above set forth, and pleading that by such proceedings complainant has elected to affirm, and has, in legal effect, affirmed, the sale, and cannot be heard in equity to demand a rescission thereof.

Defendants moved, at the same time, for leave to file a still further plea, setting up all the facts, and pleading that they established such laches or acquiescence as to constitute a bar to the present suit. Leave to file this plea was denied. Upon complainant's motion an order was made that defendants file exemplified copies of the records alleged in their pleas. Reported 17 Blatchf. 389; 1 Fed. Rep. 39. Such records were found to establish the facts pleaded, so far as the existence of the records pleaded was concerned. The pleas were thereupon set down for argument.

*J. G. McCullough, J. E. Burrill,* and *E. J. Phelps,* for defendants.

*H. L. Burnett* and *E. W. Stoughton,* for complainant.

CHOATE, D. J. 1. The three pleas in bar of the defendants Park and Baxter, and the plea in bar of the defendant the Emma Silver Mining Company of New York, may be conveniently considered together. These pleas all raise the same question, namely, whether the judgment in the suit at law in this court, in favor of the defendants Park and Baxter, is a conclusive determination of the cause of action on which this bill proceeds for the avoidance of the contract of sale or of the facts constituting that cause of action. It is contended on the part of the complainant that, whatever may be the effect of the judgment as to Park and Baxter, the defendant corporation cannot avail itself of the judgment as a bar, or

as a conclusive determination of the facts, because the defendant corporation was not a party to that suit. The weight of authority, however, is that where an agent in a transaction is sued after the termination of his agency, and upon a trial of the merits the issue is determined against the plaintiff, the principal, though not a party to the suit, can avail himself of the judgment as a bar, when he is sued by the same plaintiff on the same cause of action. While the principal, if he had no notice of the former suit, and no opportunity to defend it, may not be concluded by a judgment against his former agent, or made responsible for the agent's bad pleading or blunders in the trial of the cause, because so to conclude him would be to deprive him of his property without due process of law, yet, as regards the plaintiff who has before sued the agent and been defeated, there is no reason why he should not be concluded upon that principle of public policy which gives every man one opportunity to prove his case, and limits every man to one such opportunity. He has had his day in court, and it is immaterial whether he has chosen to test his right as against the principal or the agent in the transaction, provided the issue to be tried was identical as against both. *Castle* v. *Noyes*, 14 N. Y. 329; *Emery* v. *Fowler*, 39 Me. 329, and cases cited.

The question, then, under these pleas, is whether the former suit was for the same cause of action as the present suit. For, however the defendants may be concluded or estopped by the determination of the facts necessarily determined in the former suit, if that judgment is offered as evidence in this suit as proof of such facts, yet the former judgment is not a bar to this suit if this suit is not upon the same cause of action as the former. *Cromwell* v. *County of Sac*, 94 U. S. 352. The test is whether the issue actually determined in the former suit is identical with that upon which the complainant must recover in this suit, if he is entitled to recover at all. I shall assume, for the purpose of these pleas, as claimed by the defendants, that, so far as this bill proceeds for the avoidance of the sale on account of the fraud of Park and Baxter, it states the same identical fraud that was set

forth as the ground of action in the former suit. No very material differences in this respect between the complaint and the bill have been pointed out, and, if any differences exist, they may, perhaps, be deemed differences only in the mode of stating the same fraud, or in stating the acts done in furtherance and execution of the same alleged fraudulent purpose or design, and these differences might not affect the present question.

If however, there is a fact which must have been established in the former suit, to authorize the verdict and judgment, which the complainant is not obliged to prove to entitle it to a decree avoiding the sale in this suit, or if such decree may, in this suit, pass upon proof of any of the allegations of the bill not necessarily determined against the complainant in the former suit, then the judgment is no bar, and those pleas must fail. A careful comparison of the former complaint and the present bill shows that there is a fact which the plaintiff in the former suit was obliged to prove in order to recover, which is not necessary to be proved in the present suit to entitle the complainant to a decree of rescission, and that there are facts alleged as the ground for relief in the bill not necessarily determined adversely to the complainant in the former suit. Without going more into detail, it is clear that the bill alleges that the sale sought to be avoided was agreed to on behalf of the complainant corporation by a board of directors who were not the independent representatives of the stockholders, but who were, with one exception, either the agents of the vendors, or qualified as directors by receiving from the vendors or promoters of the company that number of shares which, by the articles of the association, it was requisite that they should hold in order to constitute them directors, and that some of them had other agreements with the promoters of the company, which created, or tended to create, in them a personal interest on their part in assenting to the sale that might be inconsistent with the true interests of the complainant corporation, which they were, as directors, bound alone to subserve. And it further appears by the bill that this mode of qualifying the directors,

and these agreements, were in fact concealed from those persons who, by subscription to the stock, became members of the corporation. Proof of such want of an independent board of directors, at the time of the transaction of sale, without the knowledge of the stockholders, would entitle the corporation to a rescission, as a matter of course, if applied for with that diligence which a court of equity requires for the institution of such a suit. *Sombrero & Phosphate Co.* v. *Erlanger*, 5 Ch. D. 108; S. C. 3 App. Cas. 1226. It is true that the payment of money or other valuable consideration to induce various persons to become directors is alleged in the complaint in the former suit, and it may have been intended thereby to describe the same transactions mentioned in the bill; and it is alleged in the complaint that such payments were made by the defendants Park and Baxter in pursuance of that fraudulent purpose and design on their part which is made the basis of the former action for deceit, and which is evidently also relied on in the bill as one of the grounds for avoiding the sale for fraud. But it is evident that, so far as these allegations of facts are concerned, in order to make them a basis for a recovery in the former action, the jury must have been satisfied by a fair preponderance of the evidence that the acts so alleged to have been done by Park and Baxter were done with an actual intent to defraud the complainant company. No such intent need be proved in the present case to entitle the complainant to rescind. It will not do, as argued by defendants' counsel, in order to test the present question, to strike out of the bill all allegations of acts done with a fraudulent intent on the part of Park and Baxter. If that were done, there might, indeed, be nothing left of the bill. The proper test is what will remain of the material allegations of the bill if the alleged fraudulent intent of Park and Baxter were disproved. Judged by this test there remains enough of the bill to entitle the complainant to a rescission, as matter of law and equity, if no successful defence to such remaining allegations shall be interposed. It is, however, insisted on the part of the defendants that the bill cannot be properly construed as a bill to rescind, except upon the ground of fraud;

that it does not state the facts above referred to, or other facts independently of fraud, as the apparent ground or basis on which the pleader relied; and that it does not contain any prayer for rescission, except on the ground of fraud.

The form of the prayer for relief may undoubtedly be referred to, where the purpose of the pleader is fairly doubtful, in the stating part of the bill, to ascertain the grounds on which he proceeds; but in the present case the prayer of the bill is not inconsistent with an intent on the part of the pleader to rely on the facts above referred to, with or without proof of actual fraud. The prayer is that the transaction of sale be declared to be fraudulent and void; that the complainant be decreed to be entitled to a return of the consideration; and for general relief. The special relief thus prayed for seems to me to be enough to indicate that the pleader may have had in view an avoidance of the sale, even without proof of the alleged fraud. The prayer that it be decreed fraudulent and void is not necessarily to be understood as a prayer that it be declared void simply because fraudulent; and the prayer for the return of the consideration, which is the substantial part of the relief to follow a rescission, is equally appropriate in either view of the bill. Nor is there in the body of the bill anything to show that the pleader relied wholly on the alleged fraud, or framed his bill on the theory of fraud alone. I do not think, upon a fair perusal of this bill, that the defendants have been misled as to the grounds on which the relief sought is asked for. The defendants cite *Hickson* v. *Lombard*, L. R. 1 H. L. 321, as an authority for treating this bill as a bill for fraud only. There is nothing in that case to sustain this view of the bill, except a *dictum* of Lord Cranworth, which, however, is not sustained by the opinion of the Lord Chancellor, and is opposed to the views of all the learned judges in the courts below, and is only applicable to the present case if it appears that the bill was so framed as to mislead the defendants into the belief that the complainant relied alone on his charges of fraud. I think that case fails to sustain this position of the defendants. These pleas must therefore be overruled.

2. The separate plea in bar of the defendant Park to that part of the bill praying for an injunction against him in respect to the notes given for the settlement of the claims of the Illinois Tunnel Company, that the complainant has commenced a suit against him to recover damages upon the same cause of action, which suit proceeded to a judgment in favor of the defendant, is clearly bad, because it appears, by the record filed with and made part of the plea, that the judgment was rendered upon a *nonsuit* of the plaintiff, and not upon the merits. It is therefore no bar to a new suit upon the same cause of action, nor does it estop or conclude the plaintiff as to the facts alleged both in that action and in this suit as the ground or cause of action.

3. The second separate plea in bar to the same part of the bill last above referred to, is based on the judgment recovered in the district court of the third judicial district of the territory of Utah, upon the same notes, the collection of which is here sought to be restrained by injunction. Whether this judgment is binding and conclusive upon the complainant, depends upon the question whether the court acquired jurisdiction of the person of the defendant in the action, the present complainant. The plea avers that the said defendant Park, plaintiff in that action, "caused the service by summons in said action to be made by the United States marshal for said district upon the orator, through its duly authorized agent resident in said Salt Lake county aforesaid." By setting the plea down for argument, this averment is admitted to be true, except so far as the record, since produced and made part of the plea, shall contradict the averment. The record contains nothing inconsistent with this averment. On t' e contrary, the record recites that the defendant, the Emma Silver Mining Company, (limited,) was regularly served with process and failed to 'appear and answer, and accordingly judgment was entered by default against the defendant. Although it is competent for a defendant in a judgment record to contradict the record to the extent of showing that no personal service was made upon him, and thereby to avoid the effect of the judgment, showing in fact

that the court acquired no jurisdiction of his person, yet every intendment is to be made in favor of the truth of the record. It is in this case *prima facie* proof that process was regularly served upon the present complainant in that action. A judgment by default, where the court has acquired jurisdiction of the party defendant, is equally conclusive with a judgment upon a verdict, or after trial of the merits, in respect to the particular cause of action sued upon. Such a judgment by default admits, for the purpose of the action, the legality of the demand or claim in suit. *Cromwell* v. *County of Sac*, 94 U. S. 356. The utmost effect, however, that can be given to this record, is that it estops the complainant from setting up any defence to these notes which he could have availed himself of by way of answer in the action at law brought upon them; and the question as to the sufficiency of this plea is whether, upon the case made in the bill, the complainant may, in equity, as part of the relief that it may show itself entitled to, claim an injunction against the further enforcement of the claim embodied in these notes given for settlement of the claims of the Illinois Tunnel Company, or of the judgment recovered thereon, either because their only defence against the notes was one available in equity and not by answer in a suit at law, or because such an injunction is a proper part of the relief to which complainant would be entitled upon a rescission of the contract of sale.

It is insisted on the part of the complainant that the relief claimed in this bill against the collection of these notes, as well as that prayed for against the collection of the moneys advanced to pay dividends, is only asked for as part of the relief to which complainant will be entitled in case a rescission of the contract is awarded by the decree of the court; and that these parts of the bill thus pleaded to are not and were not designed to be set forth as separate and independent causes of action. But if this claim be in fact a distinct cause of action it is no objection to the relief asked that this claim also has been included in the bill, because the bill has not been objected to as being multifarious. It must be assumed in considering this plea that a rescission of the sale may be

decreed, because this plea is not to that part of the bill which seeks a rescission. The case stated in the bill against the Illinois Tunnel Company notes is briefly this: That in the year 1872, while the chairman of the complainant's board of directors was in this country, the Illinois Tunnel Company made an excavation which struck a portion of the ores which the defendant Park had claimed to be within the patent of the Emma mine, and that a suit was instituted by the complainant against the tunnel company to recover damages for this trespass; that the notes were given in settlement of this interfering claim of the Illinois Tunnel Company, and upon a transfer to complainant of its rights; that the settlement was made under the advice of Park, and collusively between him and the Illinois Tunnel Company, for the amount of the notes, but really for a smaller consideration, the object of Park being to acquire some interest or color of title for the complainant in the ores claimed by the Illinois Tunnel Company, and which he had led the complainant to believe were, but which in fact were not, within the purchase of the Emma mine, and thus also to protect himself at the expense of the complainant company, of which he was director, against a claim on its part against himself for deceit in the sale; that he deceived the complainant by concealment of the facts as to the nature and effect of the agreement thus made between the complainant and the tunnel company. It is not alleged in the bill that this was a dishonest claim on the part of the Illinois Tunnel Company, or that that company knew of the fraudulent purpose of Park in making this agreement for a transfer of its claims to complainant. It appears to me that if the facts alleged in the bill with reference to these notes were true, they could have been availed of as a defence against Park in the suit at law if discovered by complainant at the time it was required to defend the suit, and that this transaction is so distinct from the original sale that the rescission of the sale would not of itself affect the question of the liability of the complainant upon these notes. They purport to represent the consideration due to a third party upon the purchase of other property, or at least other and different

claims to property.   I think, therefore, that the complainant is estopped by this record from showing that, by reason of the facts alleged in the bill, the complainant did not owe him the amount of these notes.   Those facts are in effect negatived by the judgment, and it seems that the burden is on the complainant to aver and show, if the fact be so, a subsequent discovery of those facts which might have given it a case for relief in equity, which it could not avail itself of at law, and which would excuse its failure to defend the action, and thus to deprive the judgment of its character as an estoppel.   The notes were given in 1874.   The suit was commenced in 1876. The bill certainly does not allege a discovery of the facts subsequent to the commencement of the suit, or their continued concealment all that time.   Assuming, then, that the complainant is estopped to deny that the notes were due to Park, it further appears to me that there is no such connection between these notes, or the agreement between complainant and the tunnel company, under which they were given, that the amount paid to or recovered by the defendant Park upon them can be set off or charged against any sum that complainant may recover against him upon the rescission of the sale.   What he has so recovered was recovered upon a distinct cause of action, disconnected with the sale.   This plea must, therefore, be sustained.

4. The third separate plea of the defendant Park is to that part of the bill which prays relief by injunction against the collection by said Park of his alleged claim for moneys advanced to pay dividends.   The plea alleges that a judgment in a suit at law has been recovered upon the identical claim in the United States district court for the territory of Utah; that the process was "duly served upon the orator, defendant therein, through its authorized agent."   It also avers that the defendant therein, this complainant, duly appeared in said action, and filed a demurrer to the complaint, and made a motion to discharge an attachment made in the suit.   These acts constitute a voluntary appearance of the defendant. They are not contradicted, but confirmed, by the recitals contained in the records produced as part of the plea.   It must

be held, therefore, that the court had jurisdiction of the person of the defendant, and the judgment, though by default, for want of answer or appearance on the day of trial, is binding on the complainant. The plea, however, further alleges that the judgment has been satisfied by the sale on execution issued under said judgment of the property of the complainant, being the same property which is sought to be recovered by the decree of rescission. The bill avers, in reference to this sale on execution, that the property was bid in by one Lincoln, as the agent, and for account of the defendant Park. It is suggested on behalf of the defendants that the fact of the sale on execution of the subject-matter of the contract sought to be rescinded, which fact must be held to be admitted by setting down this plea for argument, puts an end to complainant's right to rescind, because it makes it impossible for complainant to restore the property to defendants upon a rescission. This point, however, is immaterial, so far as this plea is concerned, for this is not a plea to the bill as a bill for rescission, and therefore the question cannot be raised on this plea whether the complainant is entitled to rescind. It must be assumed for the purpose of this plea that there may be a decree of rescission.

Aside from this consideration, I see no reason why, if the defendant Park took the property under the sale in execution, as is in effect alleged in the bill, with full knowledge of the equitable rights of complainant to have the original sale rescinded, the defendant Park may not be treated in equity as having bought the property subject to those equitable rights. By suffering judgment to be taken against it in that action the complainant cannot be deemed to have consented to or joined in the transfer of the property under the sale on execution, nor to have waived or forfeited its equities against one having full notice of them. It is enough, however, to say that the question, though discussed by counsel, does not fairly arise on this plea. The record must be held to estop the complainant from availing itself against the defendant Park of the facts averred in the bill which would have constituted a valid defence at law to a suit for the recovery of these

moneys advanced. The fraud alleged is that Park falsely represented the money so advanced to be in fact the moneys of complainant—earnings of the mine and proceeds of its ores. If this would constitute a good defence to the action for money lent, it is now too late for the complainant to prove it; but if it were consistent with the plea that the claims of this defendant were still outstanding and in existence, although complainant might be estopped by the record to deny the validity of his claim for these advances, it would seem that upon a rescission of the contract, and the granting of the relief prayed for against Park consequent thereon, an injunction against the collection of this claim might be a part of the relief to which the complainant would be entitled. Upon a rescission of a sale, full equity will be done between the parties in respect to their dealings with the subject of the sale subsequent thereto, and this advance of money to pay dividends seems to me to be so connected with the sale itself, and the subsequent use of the property, that account would and must be taken of it in determining the whole relief to be given upon a rescission of the sale. So far as the facts relating to this advance of money are set forth as ground for complete relief upon a rescission of the sale, this plea does not purport to be a defence to the bill, nor if this plea is sustained will it prevent the taking of such advance of money, and its repayment into account upon a decree of rescission; but, as regards the separate claim of the complainant to an injunction against its collection, the plea does allege facts which make such an injunction inappropriate as part of the relief to which the complainant will be entitled. It shows that this claim for money lent has been merged in a judgment, which has been satisfied by payment. This plea is on this ground sustained.

5. The only plea remaining to be considered is the joint plea in bar of the defendant the Emma Silver Mining Company of New York, and the defendants Park and Baxter. It is a plea to the whole bill, except the parts to which the pleas by the defendant Park, last considered, are pleaded. It sets forth the commencement and prosecution to judgment of the action for damages against Park and Baxter for the frauds

alleged in the bill, and also the commencement of the other suit in this court brought against the defendant Park, among other things to recover damages for failure on his part to deliver certain ores mentioned in the contract of sale, and therein agreed to be delivered to complainant, and which, by the original contract of sale, the defendant Park bound himself personally to deliver. The record produced shows that this second action resulted in a judgment of nonsuit by reason of the complainant's failure to appear and prosecute it after issue joined.

The plea avers that by said actions the complainant has elected to affirm, and has thereby in legal effect affirmed, the contract, and elected to hold the property thereby obtained, and cannot be heard after such election to demand the rescission of the sale. The first question raised under this plea is as to the meaning and scope of the plea itself. It is insisted by the defendants that the plea should be sustained on the ground that the facts therein alleged show laches and inexcusable delay on the part of the complainant in bringing this suit. The plea indeed avers that this suit was not commenced until November, 1877, about 6 years after the sale sought to be rescinded. The averment of the time of the commencement of the suit for the purpose of showing that it was after the commencement of those prior suits, which are relied upon as indicating or constituting an election to affirm the contract, was a proper averment in a plea designed to raise the defence of an election to affirm the sale by the bringing of those suits; and it is not to be argued from this averment that the plea was intended also as a plea of laches. The plea itself states with great exactness the point by way of defence to which its averments are designed to converge, namely, the affirmance of the sale by electing to take remedies inconsistent with its rescission. This is a different defence from laches or delay in proceeding to bring the suit to rescind. Moreover, the court refused to allow a plea of laches or of general acquiescence to be filed, and if the plea were ambiguous, as it is not, it would be construed as being designed to be in conformity with the leave to plead given by the court; nor could it be con-

strued as a plea of laches, as well as a plea of election to affirm, without being held bad as setting up two defences in the same plea. For these reasons it must be held that the only question raised is whether, by one or both of the former suits, the complainant has elected irrevocably to affirm the sale in such manner that he has lost the right to rescind it, if that right ever existed. That the sale, if impeachable at all, was voidable only, and not void by reason of the facts alleged in the bill, is entirely clear. That in such a case the vendee has an election to affirm or to rescind, upon coming to a full knowledge of the facts, is also well settled. Any deliberate act on his part, done with the full knowledge of his rights, inconsistent with an intention to rescind, and in effect taking advantage of the sale for his own benefit, will constitute an election to affirm the sale, by which he will be bound. This doctrine seems to rest not upon the principle of a new contract between the parties, nor yet upon the ordinary principle of estoppel *in pais*, but rather upon a distinct principle of public policy, that all that justice or equity requires for the relief of a party having such cause to impeach a contract is that he should have but one fair opportunity, after full knowledge of his rights, to decide whether he will affirm and take the benefits of the contract, or disaffirm it and demand the consequent redress. Any other rule would be regarded as unjust, even towards the party guilty of the wrong out of which grows the right to rescind. Hence, also, it is a consistent part of the same rule that the election to affirm or disaffirm must be made with reasonable diligence after the cause for disaffirmance is fully discovered. It is clear enough that the taking of legal remedies, by action against the other party to the contract, which are consistent only with a purpose to affirm and take the benefit of the contract, if deliberately done with full knowledge of his rights, will extinguish the right to disaffirm the contract. The difficulty in this particular case is to determine whether the remedies taken against the defendant Park, and relied on in this plea, are consistent only with such a purpose to affirm the sale. I think the authorities are clearly to the effect that the act constituting

an election to affirm need not be a transaction with the other party to the contract personally; as, for instance, a suit against him personally. It may be an unequivocal dealing with the property itself inconsistent with an intention to restore it, or a suit against another person, which proceeds upon an unequivocal affirmance of the contract, and seeks relief for its enforcement.

Whether the bringing of the action brought against Park and Baxter for deceit, to recover damages for the alleged frauds committed by them in effecting the sale, while they were acting as agents of the vendors, was such an affirmance of the sale, has been debated with great earnestness and learning by the counsel in this case.

Authorities almost without number have been cited as bearing upon the question, yet no case has been referred to which is a direct and decisive authority upon the question. Numerous *dicta* have been found to the general proposition that a vendee has his election to affirm the sale and recover damages for the fraud, or to disaffirm it and recover the consideration. The case which comes nearest to sustaining the position of the defendants, that bringing an action of deceit to recover damages for the fraud will constitute an election to affirm the sale, is *Kimball* v. *Cunningham*, 4 Mass. 505. This case contains a ruling of Chief Justice Parsons to that effect, which perhaps can hardly be called a mere *dictum*, although the ruling is made after disposing of the case upon other grounds. The opinion of that learned judge is certainly entitled to the greatest consideration, but it is to be observed that the case does not disclose the precise form of the declaration in the prior action for deceit. No doubt a declaration in an action for deceit may be so framed as expressly and unequivocally to affirm the contract of sale; as, for instance, if it sets forth the sale, the fraud and deceit, the use or retention of the property, and claims damages for the difference between its actual value and the value which it was represented to have. The learned Chief Justice, in the case referred to, based his ruling on a particular suit brought, and unless it can be ascertained what was its precise form it

cannot be affirmed with certainity that the case holds, as a general proposition of law, that suing the guilty party for deceit in a sale *ipso facto*, and in all cases, is to be deemed to be an election to affirm and not to disaffirm the contract. It is impossible to notice in detail all the authorities cited, most of which, indeed, have no bearing on this precise question, except as they affirm the general doctrine of the effect of the election of inconsistent remedies as constituting an affirmance of the contract. Nearly all the cases are such that the prior suit relied on as an election is an unequivocal act adopting the contract and seeking to recover the fruits of it, or a benefit to which the party was entitled only upon its being continued in force; as, for instance, suits by the vendor to recover the purchase money and the like. There are, however, several cases which appear to hold that an action to recover damages for deceit in a sale does not imply an affirmance of the contract, but is consistent with its disaffirmance. *Hersey* v. *Benedict*, 15 Hun, 282; *Whitney* v. *Allaire*, 1 N. Y. 305; *Hubbell* v. *Meigs*, 50 N. Y. 480; *Henderson* v. *Bacon*, L. R. 5 Eq. 249. Upon principle I can see no necessary inconsistency between an action against the agents of the vendor to recover damages for their deceit in effecting the sale, and its disaffirmance as against the vendor himself. The deceit practiced, resulting in damages, is a valid cause of action against the agents to the full extent of the damages suffered. That damage may be reduced, indeed, by partial reparation made by the vendor himself. So, too, if the vendee elects to keep the property, and it has value in computing the amount of damage recoverable against the guilty agents, that value must be credited; and if, at any time before the damages for the deceit are assessed, there has been an election to affirm, that fact may be shown in reduction of the damages; but I can see no principle of law or justice that requires me to hold that the retention of the property as against the vendor discharges or waives this valid claim for damages against the agents. On the contrary, so to hold would in many cases operate most injuriously against a party defrauded, and in favor of the wrong-doer, and such a

rule would in many cases operate practically to protect him from all the consequences of his fraud when once it had been successfully accomplished. Take, for instance, a case like the present, as stated in the bill,—a purchase of property for an immense price paid, but of comparatively small, yet of some considerable value, the sale being effected through the deceit of the agents of the vendor. Suppose, also, as is often the case, that it is impossible to recover full compensation or any considerable part of the price from the vendor himself. Would there be any justice or reason in making the retention of the slight benefit which the vendee has received from the vendor, to the exclusion of some other remedies, a condition for his recovering the damages which he has actually suffered against parties by whose fraud that damage was effected, against whom alone he may have any fair expectation of full reparation, or in releasing such parties from their liability to make good the loss on account of any dealing with their principal short of full reparation for the injury?

I have therefore come to the conclusion that an action for deceit against the agent is not inconsistent with the disaffirmance of the sale. It is consistent either with its affirmance or its disaffirmance. The complaint against the agent may be framed so as to be an affirmance or a disaffirmance by containing a deliberate adoption of the sale as valid and in force, or a deliberate rejection of it as void. There is nothing in the form of the complaint in the former suit here relied upon which amounted to an adoption or a disaffirmance of this contract of sale. It did not unequivocally show an election to affirm or disaffirm. It left the plaintiff free, consistently with all the averments of fact contained in the complaint, to insist that the same facts therein set forth as to the ground of damages for fraud also entitled the plaintiff to restore the property to the vendee, and demand any further reparation for the wrong against the vendor. It does not ask to have the value of the property retained set off against the price paid, in measuring the damages. On the contrary, it claims as damages for the fraud an amount equal to the whole price paid. The complaint contains an *ad damnum* of $5,000,-

000,—the same amount as the purchase price of the property,—but this is demanded, not *as the price*, but as damages for the deceit. The complaint, indeed, states that the plaintiff was, by the deceit charged, induced "to purchase" and did "purchase" the property; but this averment must not be understood as an election to consider the purchase as one not voidable. It was properly averred to be a purchase for the purpose of that action, though voidable. The terms used are to be construed merely as descriptive of the transaction, and the plaintiff was not called upon then and there to declare his intention to avoid or to affirm it. The commencement of that action must, therefore, be held not to preclude the complainant from its remedy by rescission, if it has such remedy, on other grounds. Nor has the judgment for the defendants in that action any such effect. Even a judgment against the defendants would not so operate unless it were satisfied, for the reason above stated.

The other suit set forth in this plea as an act electing to affirm the sale is an action brought by this complainant against the defendant Park to recover damages for the non-delivery of ore agreed to be delivered in the contract of sale which was executed by Park on his own behalf, as well as on behalf of the vendors, his principals in the transaction. The complaint alleges the making of the executory contract of sale; that by said agreement Park agreed to sell to the plaintiff, this complainant, the ore in question; that said contract was afterwards performed in all respects on the part of the plaintiff, but that it had not been performed on the part of defendant Park, or by the Emma Silver Mining Company of New York, the vendor, in certain respects, including this: that the defendant Park, though often requested, has not delivered or caused to be delivered to the plaintiff, or accounted to the plaintiff, for a certain specified part of the ore so agreed to be delivered, whereby the plaintiff is alleged to have suffered damages to the amount of $350,000. This was, in effect, unlike the action for deceit, an action brought to enforce the contract of sale. The claim made for damages on account of the partial non-delivery is wholly inconsistent with

the claim now made, that the sale was void, and with a purpose to rescind and set it aside. Upon the authorities, and within the principle herein before laid down, the bringing of such an action deliberately and with full knowledge of the facts is an election to affirm the contract. *Clough* v. *Railway*, L. R. 7 Ex. 36; *Conanhan* v. *Thompson*, 111 Mass. 270, and other cases cited. In fact, it was a suit to recover the fruits of the contract, to which the plaintiff could be entitled only on the theory that the sale was valid and to continue in force. If such an action is brought by mistake, through inadvertence or misunderstanding of counsel, it may not have the effect of an estoppel; but the presumption certainly is that so solemn and deliberate an act, done in plaintiff's behalf by attorneys of the court, is done advisedly and by the plaintiff's authority; and if there is any circumstance depriving the act of this character, such circumstance, in excuse or avoidance of the act, must be alleged by the complainant. It is insisted, however, by the complainant, that it does not sufficiently appear on this plea that the act so relied on as an election to affirm was done with a full knowledge of the facts now alleged in the impeachment of the contract. I think that it does not sufficiently appear on the plea and the records, which, upon complainant's motion, have been made part of the plea, that this second action was commenced with a full knowledge of all these facts. The plea alleges that this second suit was commenced long after the complainant, in his bill, claims to have become fully cognizant of all said facts. I have looked into the bill in vain to find any statement whatever therein as to the time when the facts alleged therein in impeachment of the sale, and therein alleged to have been concealed, were discovered by or became first known to the complainant. The complainant does not claim in the bill to have so become cognizant of these facts at any time prior to verifying the bill itself. This allegation of the plea, therefore, cannot be taken to be an averment of such knowledge at the time of the commencement or during the pendency of that suit. Nor is this defect of averment on this material point aided by the other parts of the plea, or by the records which are produced as

part thereof.   It is true that it appears by these papers that the complaint in the action for deceit was verified and served before this second suit was commenced; and it is also true that, as to the greater part of the alleged fraudulent acts set forth in the bill, they are also set forth, with little difference of detail, in that complaint.   But other facts stated in the bill—those, for instance, relating to the giving of qualification shares to all but one of the directors, other than Park and Baxter, and the secret agreement with the American minister under which he also became a director—are not stated in the complaint nor alluded to, unless it be in the general statement near the close of the complaint that the defendants did "by the like devices," that is, among other things, "by the payment of large sums of money and other valuable considerations," etc., "and by bribery in various forms, the particulars whereof are unknown to the plaintiff," "induce various persons to become directors and trustees of the plaintiff company."   Giving full effect to this as an admission of what the complainant knew at a time prior to the commencement of this second suit, I do not think it comes up to that full knowledge of the material facts which is necessary to make the commencement of that suit an act of election, precluding the plaintiff from proceeding for a rescission on those facts. The complaint shows a very imperfect knowledge of these facts as alleged in the bill; indeed, it does not certainly show any accurate knowledge or information as to the dealing with any of the several directors, as detailed in the bill.   In this view of the case it is unnecessary to consider the point raised by the complainant, that this plea is too broad, on the ground that the part of the bill to which this plea is pleaded states a case, and justifies relief against Park and Baxter, beyond the rescission of the contract and the relief consequent thereon; that it is, in fact, a bill against them also for the recovery of profits made by them while acting in a fiduciary relation to the complainant, independently of the case for rescission.   The plea must be overruled for want of the necessary averment that at the time of the commencement or during the prosecution of the second action the complainant was

cognizant of the facts alleged in the bill for avoiding the contract.

The three pleas in bar of the defendants Park and Baxter, the plea in bar of the defendant the Emma Silver Mining Company of New York, and the joint plea in bar of all the defendants, overruled. The first plea in bar of defendant Park overruled; the second and third sustained.